UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM VAN WADE,

                    Plaintiff,

          v.

JOHN NITTI, *et al.*,

                    Defendants.

---

**DECISION AND ORDER**

6:21-CV-06726 EAW

## **INTRODUCTION**

*Pro se* plaintiff William Van Wade ("Plaintiff") has sued numerous defendants for a variety of federal and state law claims, all purportedly arising out of a gas leak at Plaintiff's then-residence in 2019. (Dkt. 4). There are currently eight motions pending in this action: (1) a motion to dismiss filed by defendants Jay DeWitt ("DeWitt"), William Dyrland ("Dyrland"), Jim Shafer ("Shafer"), and Walt Wilczewski ("Wilczewski") (Dkt. 6); (2) a motion for alternative service filed by Plaintiff (Dkt. 12); (3) a motion for electronic filing privileges filed by Plaintiff (Dkt. 13); (4) a motion to dismiss and for summary judgment filed by defendant Rodney Mastrosimone ("Mastrosimone") (Dkt. 17); (5) a motion to dismiss and for summary judgment filed by defendants Gregory Carver ("Carver"), Heather Cook ("Cook"), Charles Hetrick ("Hetrick")[1], and Terry Wallace ("Wallace") (Dkt. 21); (6) a motion to allow manual filing filed by Plaintiff (Dkt. 24); (7)

---

[1] Hetrick was named in the amended complaint—the operative pleading in this matter—as "Charlie Doe." The Clerk of Court is directed to amend the caption to reflect his full name.

a motion for a default judgment filed by Plaintiff (Dkt. 36); and (8) a motion to dismiss filed by defendants Rory Fitzpatrick ("Fitzpatrick"), Kerry Ivers ("Ivers"), Gregory Merrick ("Merrick"), John Nitti ("Nitti"), and Dave Seeley ("Seeley") (Dkt. 39).[2]

For the reasons that follow, the Court: (1) grants in part and denies in part the motion to dismiss filed by DeWitt, Dryland, Shafer, and Wilczewski; (2) denies Plaintiff's motion for alternative service; (3) denies Plaintiff's motion for electronic filing privileges; (4) grants in part and denies in part Mastrosimone's motion to dismiss and for summary judgment; (5) grants in part and denies in part the motion to dismiss and for summary judgment filed by Carver, Cook, Hetrick, and Wallace; (6) denies Plaintiff's motion to allow manual filing; (7) denies Plaintiff's motion for default judgment; and (8) grants in part and denies in part the motion to dismiss filed by Fitzpatrick, Ivers, Merrick, Nitti, and Seeley.   The Court further orders that Plaintiff shall effectuate service on all unserved defendants by no later than <u>March 10, 2023,</u> and shall file proof of service of the same by no later than <u>March 15,  2023</u>.  If Plaintiff does not comply with these deadlines, his claims against the unserved defendants will be dismissed without prejudice.

## FACTUAL BACKGROUND

The following factual allegations are taken from the amended complaint (Dkt. 4), which is the operative pleading in this matter.

---

[2]    Plaintiff also filed a supplement to his opposition to one of the pending motions to dismiss, along with a request that the Court consider it.  (Dkt. 35).  In light of Plaintiff's *pro se* status, the Court grants this request to the extent that it has considered Plaintiff's arguments set forth in his supplemental filing.

Plaintiff alleges that he was injured between April 2019 and November 2019. (Dkt. 4 at ¶ 29). At that time, Plaintiff was living in an apartment owned by Carver, in the Eagle's Landing apartment complex. (*Id*. at ¶¶ 30, 42). Plaintiff claims that the gas lines at Eagle's Landing were "installed without industry standard and manufacturer required striker plates, safety straps and harnesses." (*Id*. at ¶ 49). Plaintiff further alleges that Carver and Cook (the property manager for Eagle's Landing) were aware that the gas lines lacked striker plates but failed to warn Plaintiff of the associated hazards. (*Id*. at ¶¶ 38, 60). According to Plaintiff, he noticed a strong smell of gas when he initially moved into his apartment and alerted Cook, but she "assured [him] that it was nothing to worry about and all is safe." (*Id*. at ¶ 60). Plaintiff claims that Carver "verbally informed" him that "his maintenance staff were aware of the cause of the leak prior to plaintiff's arrival at said location." (*Id*. at ¶ 62).

Plaintiff alleges that the "faulty and unsafe gas lines were installed by representatives of American Plumbing HVAC/Mechanical Inc." (*Id*. at ¶ 56). Plaintiff claims that Mastrosimone, an employee of American Plumbing HVAC/Mechanical Inc., "went directly against safety codes and manufacturer guidelines" in installing the gas lines at Eagle's Landing. (*Id*. at ¶ 78). Plaintiff asserts that around February 9, 2018, Nitti approved the "Rough Plumbing inspection phase as being sufficient," even though he was aware that the gas lines had been installed in a defective fashion. (*Id*. at ¶ 85). According to Plaintiff, an "Engineer Notice" from Scott Kantar, the construction project engineer, was issued around February 26, 2018, that noted outstanding issues with the gas lines, but these issues were omitted from the official inspection log. (*Id*. at ¶ 86). Plaintiff further alleges that Seeley did not sign an "environmental checklist used to grant the Town ordinance passed to allow

the construction of the property" at a time when he was the acting town supervisor.  (*Id*. at ¶ 50).

Plaintiff claims that the lack of striker plates resulted in a subfloor puncture of the gas line "in the HVAC closet located in the living room where [he] spent [the] majority of his time."  (*Id*. at ¶ 57).  According to Plaintiff, excess gas consistently leaked out of the HVAC closet and traveled through the ventilation system in his apartment.  (*Id*. at ¶ 59).  Plaintiff claims to have sent a video to Carver and Cook "showing the gas coming out of the vents when the HVAC unit was activated."  (*Id*.).  Plaintiff further claims to have made multiple attempts to discover the source of the gas, including by causing Wallace, whom he describes as "apartment maintenance staff," to "come and service the HVAC closet w[h]ere the leak and/or smell was located as strongest source."  (*Id*. at ¶ 61).

Plaintiff alleges that Ivers refused to release relevant information to Plaintiff about Eagle's Landing, "such as the application used to construct the building of the hazardous gas line[.]"  (*Id*. at ¶¶ 42, 55).  According to Plaintiff, he delivered "a detailed complaint of hazards" to Ivers, Seeley, Merrick, Dyrland, and Turner, and they refused to inspect or cause an inspection of his apartment.  (*Id*. at ¶ 74).  Plaintiff also claims that employees under the direction of Fitzpatrick, the Supervisor for the Town of Irondequoit, provided site inspections in response to complaints brought by other individuals, but not in response to his complaints.  (*Id*. at ¶ 41).

According to Plaintiff, on October 24, 2019, Carver sent technician Bryan Doktor ("Doktor") to use sealant on the gas connection.  (*Id*. at ¶ 68).  Plaintiff claims that the use

of sealant on the gas connection was contrary to both the manufacturer's guidelines and the New York State Uniform Fire Prevention and Building Code.  (*Id*. at ¶ 70).

Plaintiff claims to have again notified Cook of the gas leak on November 7, 2019, and that Cook replied, "I will contact maintenance; however, in the future, this is considered an emergency and you should call the emergency maintenance number[.]"  (*Id*. at ¶ 96). Plaintiff alleges that he contacted the emergency maintenance line around November 13, 2019, and that Doktor and other maintenance staff again used sealant on the gas line.  (*Id*. at ¶¶ 97-99).

Plaintiff alleges that around November 21, 2019, he again called the emergency line and also "sent clear videos of the gas leak via email" to Carver and Cook.  (*Id*. at ¶ 100). Cook allegedly promised that maintenance staff "would be there to fix the gas leak the next morning at 7am."  (*Id*. at ¶ 102).   Wallace and other individuals "appeared around 9am" the next morning, and employees of the St. Paul Boulevard Fire Department and Rochester Gas & Electric were later called to the property.  (*Id*. at ¶¶ 104, 107).

Plaintiff claims that firefighter Barry Lamendola ("Lamendola") was asked by Eagle's Landing staff to wear foot coverings when he entered Plaintiff's apartment, but that Lamendola entered with his boots uncovered.  (*Id*. at ¶ 112).  Plaintiff alleges that he twice asked Lamendola to cover his boots and offered him foot coverings, but that Lamendola refused and ordered Plaintiff out of his way, and "walked across with his wet soiled boots damaging the floor."  (*Id*.).  Plaintiff claims that when he "tried to discuss the trespass with the wet soiled boots with" Lamendola and his supervisor DeWitt, Lamendola and DeWitt

"taunted, verbally attacked and humiliated" Plaintiff in front of maintenance staff, other firefighters, and other people present in the parking lot.   (*Id*.).

On November 22, 2019, Plaintiff claims to have "experienced an obvious and unbearable amount of chest pains before, during and after maintenance staff and Fire Fighters with St. Paul Boulevard Fire Department arrived at" Plaintiff's apartment.   (*Id*. at ¶ 66).   Plaintiff alleges that he told Carver and Wallace "about the inception of the chest pains being linked to the gas leaks."   (*Id*. at ¶ 67)

In a somewhat confusing fashion, Plaintiff asserts that Dyrland "simulated events that never occurred via incident report that a 911 call was made on 11/22/19" to the apartment and that he "relied on this simulation of legal process via his incident report to be used as a means to perpetrate actual fraud by misleading any third party accessing the totality of circumstance as to the substance and nature of what actually occurred."   (*Id*. at ¶¶ 71, 72).   Plaintiff further alleges that Carver was aware that no 911 call had actually been made regarding the gas leak, but that Plaintiff "was led to believe it did and did in fact relied [sic] on this belief for several weeks," causing him to delay taking other action to deal with the gas leak.   (*Id*.   at ¶ 73).

Plaintiff alleges that he requested a copy of the incident report from DeWitt and that that DeWitt provided him with "a false report contrary to the intent of the report, notating no harm[.]"   (*Id*. at ¶ 53).   Plaintiff further claims that DeWitt deliberately delayed preparation of the incident report and knowingly misaddressed it.   (*Id*.).   Plaintiff alleges that Dewitt, Dyrland, and Turner refused to correct the incident report despite having been

put on notice that it was inaccurate.  (*Id*. at ¶ 42).  Plaintiff also alleges that DeWitt caused

Lamendola not to "assess plaintiff for harm due to the gas leak."  (*Id*. at ¶ 76).

Plaintiff asserts that between January 28, 2020, and December 31, 2021, he "began

requesting documents in relation to the construction of Eagle's Landings gas pipes by way

of FOIL and requested other related matters."  (*Id*. at ¶ 122).  Plaintiff claims that his various

information requests were improperly handled and denied.  (*Id*. at ¶¶ 123-46).

Plaintiff claims to have suffered significant health issues as a result of gas exposure

from the leak.  (*Id*. at ¶¶ 87-91).

## PROCEDURAL BACKGROUND

As an initial matter, the Court notes that Plaintiff commenced a separate action in

this Court in early 2021, in which he asserted claims against the St. Paul Boulevard Fire

District, DeWitt, Dyrland, and Lamendola, among others, related to the incident on

November 22, 2019, in which Lamendola allegedly entered his apartment without foot

coverings.  *See* Amended Complaint, *Van Wade v. St. Paul Blvd. Fire Dist.*, No. 6:21-cv-

06218, Dkt. 8 (W.D.N.Y. May 17, 2021).  This previous action included claims related to

the alleged falsification of the inaccurate incident report.  *Id*. at 4.  On February 17, 2022,

the Court entered a Decision and Order dismissing any federal claims asserted by Plaintiff

with prejudice, and dismissing Plaintiff's state law claims without prejudice.  *Van Wade v.

St. Paul Blvd. Fire Dist.*, No. 6:21-cv-06218, Dkt. 26 (W.D.N.Y. Feb. 17, 2022).  Plaintiff

did not appeal that decision.

Plaintiff commenced the instant action on November 29, 2021.  (Dkt. 1).  On April

1, 2022, after the dismissal of his prior action, Plaintiff filed the amended complaint, in

which he named DeWitt and Dyrland (among others) as defendants for the first time.  (Dkt. 4).

DeWitt, Dyrland, Shafer, and Wilczewski filed their motion to dismiss on May 11, 2022.  (Dkt. 6).  Plaintiff filed a response on June 14, 2022 (Dkt. 16).  DeWitt, Dyrland, Shafer, and Wilczewski filed their reply on June 23, 2022.  (Dkt. 20).

Plaintiff filed his motion for alternative service and his motion for electronic filing privileges on May 31, 2022.  (Dkt. 12; Dkt. 13).

Mastrosimone filed his motion to dismiss or for summary judgment on June 14, 2022.  (Dkt. 17).  Plaintiff filed a response on August 1, 2022.  (Dkt. 23).  Mastrosimone filed his reply on August 9, 2022.  (Dkt. 25).  Without seeking leave of the Court, Plaintiff filed a sur-reply on August 15, 2022.  (Dkt. 27).

Carver and Cook filed their motion for summary judgment on July 8, 2022.  (Dkt. 21).  Plaintiff filed a response on September 12, 2022.  (Dkt. 30).

On October 11, 2022, Plaintiff filed a supplement to his opposition to DeWitt, Dyrland, Shafer, and Wilczewski's motion to dismiss, and a request that the Court accept it.  (Dkt. 35).

On October 11, 2022, Plaintiff filed a motion for default judgment.  (Dkt. 36).  Defendant Raymond Trotta filed opposing papers on October 19, 2022.  (Dkt. 37; Dkt. 38).  Plaintiff filed a reply on October 31, 2022.  (Dkt. 40).

Fitzpatrick, Ivers, Merrick, Nitti, and Seeley filed their motion to dismiss on October 22, 2022.  (Dkt. 39).  Plaintiff filed a response on November 14, 2022.  (Dkt. 41).  Fitzpatrick, Ivers, Merrick, Nitti, and Seeley filed a reply on November 16, 2022.  (Dkt.

42).  Plaintiff, without seeking leave of the Court, filed a sur-reply on November 28, 2022.

(Dkt. 44).

## DISCUSSION

### I.     Plaintiff's Motions

#### A.     Motion for Alternative Service

Pursuant to Federal Rule of Civil Procedure 4(e), a plaintiff may effectuate service

on individual defendants by any of the following means:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  Service of process on an individual in New York is governed by

section 308 of the Civil Practice Law and Rules ("CPLR").  "In New York State, service

may be effectuated 'in such manner as the court, upon motion without notice directs, if

service is impracticable under paragraphs one [personal service], two [leave and mail

service] and four [nail and mail service] of [CPLR 308].'"  *S.E.C. v. HGI, Inc.*, No. 99 Civ.

3866(DLC), 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (quoting CPLR 308(5)).

"The meaning of 'impracticability' depends upon the facts and circumstances of the particular case." *Id*.

Here, Plaintiff seeks leave to serve all unserved defendants by providing a copy of the "300+ page Amended Complaint and other documents . . . on a flash drive," or, in the alternative, "via local newspaper." (Dkt. 12 at 1). Plaintiff also seeks "permission to use the U.S. Marshal Service ["USMS"] as the process server, to save cost," and for "cost incurred to serve this suit be imposed on" the unserved defendants. (*Id*.). The sole basis given by Plaintiff for this request is that the unserved defendants have declined to waive service. (*Id*.).

Plaintiff's request for alternative service is denied. Plaintiff has not demonstrated that the other forms of service set forth in CPLR 308 are impracticable, as is required to justify such a request.

As to Plaintiff's request for service by the USMS, Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis*, and so he is not automatically entitled to such relief. *See* Fed. R. Civ. P. 4(c)(3). Moreover, while "the court may order that service be made by a United States marshal or deputy marshal," *id.*, "[a] plaintiff requesting appointment of the United States Marshal in order to comply with the service requirements of Rule 4 must provide a factual basis for why a court order is necessary to accomplish service." *Junior v. Erie Cty. Med. Ctr.*, No. 18-CV-01014-LJV-JJM, 2018 WL 7246786, *2 (W.D.N.Y. Nov. 29, 2018) (quotation omitted). Plaintiff has not provided such a factual basis, but has indicated that he merely wishes to save on costs. This is not a sufficient reason to order service by the USMS.

- 10 -

Finally, as to Plaintiff's request that the unserved defendants be required to bear the costs of service, Rule 4(d)(2) provides that "[i]f a defendant refuses to waive service without good cause, the court must impose the following on defendant: (1) expenses later incurred in making service; and (2) reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." *Kumaran v. Vision Fin. Markets, LLC*, 338 F.R.D. 17, 18 (S.D.N.Y. 2021).  However, Plaintiff's request does not comply with the requirements of Rule 4 and is in any event premature.

Initially, before Plaintiff can collect fees under Rule 4(d)(2), it is his burden to show that he complied with the procedural requirements of Rule 4(d)(1), which—among other things—require that he provide a defendant with "a prepaid means for returning the [waiver of service] form."  Fed. R. Civ. P. 4(d)(1); *see also Kumaran*, 338 F.R.D. at 18 ("The procedural requirements of Rule 4(d)(1) are a condition precedent to a demand for costs for refusal to waive service."  (quotation omitted)).  Nothing in the record before the Court suggests that Plaintiff complied with this requirement.  To the contrary, the documentation he has filed does not indicate that he included the requisite prepaid means for returning the waiver of service.  (*See* Dkt. 5).  There is also nothing in the record before the Court on which it could base a finding that any unserved defendant lacked good cause for declining to waive service.

Moreover, Rule 4(d)(2) provides for recovery of "the expenses later incurred in making service."  Fed. R. Civ. P. 4(d)(2).  No such expenses have been incurred at this point.  Nothing in Rule 4(d)(2) authorizes the Court to preemptively impose costs on a defendant before service has been effectuated.  To the contrary, before service has been

effectuated, the Court has no personal jurisdiction over a defendant. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

For all these reasons, the Court denies Plaintiff's motion for alternative service (Dkt. 12) in its entirety.  The Court further notes that as to all unserved defendants, the time for service has expired.  Rule 4(m) requires that service be made within 90 days after the complaint is filed.  Fed. R. Civ. P. 4(m).  Where service is not timely made, "the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*. Here, in light of Plaintiff's *pro se* status, the Court will *sua sponte* grant him an extension of time to <u>March 10, 2023</u>, to serve all unserved defendants.  Plaintiff must file proof of service on or <u>March 15, 2023</u>.  <u>Plaintiff is warned that the failure to serve any unserved defendant by this deadline will result in the dismissal of his claims against that defendant without prejudice</u>.

## B.   <u>Motion for Electronic Filing Privileges</u>

Plaintiff seeks leave to electronically file documents on the Court's CM/ECF system. He claims that this is necessary because: (1) he sometimes does not receive items in the mail; and (2) he needs to have "a chance to combat motions in a timely fashion."  (Dkt. 13 at 1).

Pursuant to this Court's Administrative Procedures Guide for Electronic Filing, "[t]ypically only registered attorneys, as Officers of the Court, will be permitted to file

documents electronically." *Administrative Procedures Guide for Electronic Filing*, United States District Court for the Western District of New York (Rev. Oct. 5, 2022) at 3, *available online* at https://www.nywd.uscourts.gov/rules-individual-local-federal (hereinafter the "Administrative Procedures Guide").  However, "[a] Judicial Officer may, at his or her discretion, grant a pro se litigant who demonstrates a willingness and capability to file documents electronically, permission to register to do so." *Id*. (emphasis in original).

Here, the Court does not find that an exception to the usual rule that only attorneys will be permitted to file documents electronically is warranted.  Plaintiff does not need electronic filing privileges to access the electronic docket or view documents via PACER.  Further, the Court is careful to set deadlines in *pro se* cases that allow ample time for all parties to be heard.  Accordingly, Plaintiff's motion for electronic filing privileges (Dkt. 13) is denied.

### C.   Motion for Manual Filing

Plaintiff's next motion asks the Court to "allow a manually filing [sic] of an audio recording of a conversation between" Plaintiff and technician for Rochester Gas & Electric. (Dkt. 24).   The Court's permission is not required to manually file audio recordings.  The Administrative Procedures Guide states that "[e]xhibits such as videotapes, CDs, DVDs, and tape recordings shall be filed manually with the Clerk of Court. . . .   Manually filed exhibits must have the case number and case name securely fastened or permanently marked on the item." Administrative Procedures Guide at 8.  Plaintiff's motion for manual filing is accordingly denied as moot.

D.   __Motion for Default Judgment__

Plaintiff has filed a motion for default judgment as to defendants Nitti, Ivers, Seeley, Merrick, Trotta, Turner, and Fitzpatrick.  (Dkt. 36).     Federal Rule of Civil Procedure 55 sets forth the procedural steps for entry of a default judgment.  First, a plaintiff must seek entry of default where a party against whom it seeks affirmative relief has failed to plead or defend in the action.  Fed. R. Civ. P. 55(a).  "Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)."  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also* Fed. R. Civ. P. 55(b).

Here, Plaintiff sought entry of default as to Nitti, Ivers, Seeley, Merrick, Trotta, Turner, and Fitzpatrick on September 16, 2022.  (Dkt. 31).  The Clerk of Court's Office did not enter default, advising Plaintiff that no summonses had been issued as to these defendants, nor had waivers of service been returned executed.

An entry of default under Rule 55(a) will not be entered unless a defendant has been properly served.  *See Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (explaining that to "demonstrate that entry of default is appropriate," a party must make "a showing that the nonappearing party was effectively served with process").  As the Clerk of Court's Office correctly advised Plaintiff, there is nothing on the docket to support the conclusion that Nitti, Ivers, Seeley, Merrick, Trotta, Turner, or Fitzpatrick were ever properly served.  To the contrary, the record simply reflects that Plaintiff mailed to these defendants a copy of the amended complaint and a request for waiver of service.  Those requests for waiver of service were not returned executed (and, as discussed above in connection with Plaintiff's motion for alternative service, it does not appear that Plaintiff

complied with Rule 4(d)(1)'s requirement that he provide a prepaid means of return mailing).  As detailed further below in connection with certain defendants' motions to dismiss, this does not constitute proper service.

Because the Clerk of Court's Office properly did not enter default, Plaintiff cannot obtain a default judgment as to Nitti, Ivers, Seeley, Merrick, Trotta, Turner, and Fitzpatrick. *See Sik Gaek*, 682 F. App'x at 54.  His motion for such relief (Dkt. 36) is accordingly denied.

## II.   Motions to Dismiss and/or for Summary Judgment

### A.   DeWitt, Dyrland, Shafer, and Wilczewski's Motion to Dismiss

DeWitt, Dyrland, Shafer, and Wilczewski seek dismissal of all claims against them for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8, and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. 6-2).

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."  *Jackson v. City of New York*, No. 14-CV-5755(GBD)(KNF), 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quoting 5B Wright & Miller, Fed. Prac. & Proc. § 1353 (3d ed. 2004)); *DeLuca v. AccessIT Grp.*, *Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) ("A defendant may move to dismiss under Rule 12(b)(5) for insufficient service of process.  In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons.") (citation omitted)).  "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine

whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).   "[T]he plaintiff bears the burden of establishing that service was sufficient." *Ahluwalia v. St. George's Univ.*, *LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quotation omitted), *aff'd sub nom. Ahluwalia v. St. George's Univ.*, 626 F. App'x 297 (2d Cir. 2015); *Khan v. Khan,* 360 F. App'x 202, 203 (2d Cir. 2010) (burden is on plaintiff to establish that service was sufficient); *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, No. 1:19-CV-00016 EAW, 2019 WL 1597497, at *6 (W.D.N.Y. Apr. 15, 2019) ("When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." (internal quotations and citations omitted)).   "Where a defendant moves to dismiss under both Fed. R. Civ. P. 12(b)(5), for insufficient service of process, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim, the trial court will ordinarily consider the jurisdictional issues first."   *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) (quotation and alteration omitted).

Here, Plaintiff apparently attempted to serve DeWitt, Dyrland, Shafer, and Wilczewski by mailing "several summons and complaints" to their attorneys.  (Dkt. 6-2 at 14).  Plaintiff also mailed a request to waive service to each of these defendants.  (Dkt. 5). However, none of them agreed to waive service.  (*See id*.).

"As a general matter, 'service of process on an attorney not authorized to accept service for his client is ineffective.'"  *Macon v. Corr. Med. Care, Inc.*, No. 12-cv-6150, 2015 WL 4604018, at *3 (W.D.N.Y. July 30, 2015) (quoting *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990)).  Moreover, "simply serving in the capacity of attorney, or representing the client previously, does not render the attorney an agent for

service of process." *Id.* (citation omitted). There is nothing before the Court to support the conclusion that DeWitt, Dyrland, Shafer, and Wilczewski had designated their attorney as an agent for service of process. Accordingly, mailing a package of summonses and complaints to the attorney did not constitute proper service.

Plaintiff is also not excused from serving DeWitt, Dyrland, Shafer, and Wilczewski simply because they did not agree to waive service. Waiver of service is a voluntary act, as the forms utilized by Plaintiff make clear. (*See* Dkt. 5 at 6 ("If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.")).

Plaintiff has not properly served DeWitt, Dyrland, Shafer, and Wilczewski under any section of Rule 4 or New York state law. Further, these defendants have not waived service of the summonses and complaint. As previously noted, pursuant to Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In light of Plaintiff's *pro se* status, as well as his apparent efforts to serve the summonses and complaint, and the fact that DeWitt, Dyrland, Shafer, and Wilczewski had notice of the litigation, the Court exercises its discretion to extend Plaintiff's time to serve DeWitt, Dyrland, Shafer, and Wilczewski. Plaintiff must effectuate proper service on these defendants on or before <u>March 10, 2023</u>. Further, Plaintiff must file with the Court the proofs of service confirming that he served these defendants by no later than <u>March 15,</u>

<u>2023</u>.  If Plaintiff fails to comply with these requirements, his claims against these defendants will be dismissed without prejudice pursuant to Rule 4(m).

The remaining bases for dismissal of Plaintiff's complaint raised by DeWitt, Dyrland, Shafer, and Wilczewski are denied without prejudice.  In other words, "where, as here, 'a [c]ourt is asked to rule on a combination of Rule 12 defenses,' the court should 'pass on the jurisdictional issues before considering whether a claim is stated in the complaint.'"  *Zeballos v. Tan*, No. 06 CIV. 1268 (GEL), 2006 WL 1975995, at *5 (S.D.N.Y. July 10, 2006) (quoting *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765, 769 (E.D.N.Y.1997) and *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)).  Because the Court does not have personal jurisdiction over these defendants who were never properly served, and because the Court may never have jurisdiction over them if Plaintiff fails to serve the summonses and complaint, it may ultimately be unnecessary for the Court to address the various arguments raised by these defendants in support of dismissal.  *See, e.g., Feingold v. Hankin*, 269 F. Supp. 2d 268, 270 (S.D.N.Y. 2003) (finding that plaintiff failed to properly serve defendant and deferring further discussion on the merits of plaintiff's claim until all parties had been properly served); *see also Zeballos*, 2006 WL 1975995, at *6-7 (where the court denied defendant's motion to dismiss plaintiff's complaint based on improper service and instead extended plaintiff's time to serve, also declining to consider defendant's additional defenses and motion to strike, and denying plaintiff's motion to dismiss counterclaims "as moot, without prejudice to renewal if defendant is properly served and resubmits her counterclaims against plaintiff").  In the

event Plaintiff properly serves them, DeWitt, Dyrland, Shafer, and Wilczewski may renew their remaining arguments in support of dismissal in any subsequent motion.

**B.  Carver, Cook, Hetrick, and Wallace's Motion to Dismiss and for Summary Judgment**

Defendants Carver, Cook, Hetrick, and Wallace have moved for dismissal of the complaint pursuant to Rule 12(b)(6) for failure to state a claim and pursuant to Rule 12(b)(5) for insufficient service of process, and alternatively for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. 21).

For the same reasons discussed in connection with DeWitt, Dyrland, Shafer, and Wilczewski's motion to dismiss, the Court considers first the Rule 12(b)(5) argument. Plaintiff apparently attempted to serve Carver, Cook, Hetrick, and Wallace by sending them a copy of the amended complaint via certified mail.  (Dkt. 21-6 at 14; *see also* Dkt. 15).  "A plain reading of Rule 4 establishes that service by certified mail is not an approved method for service of process under federal law[.]"  *Morris v. New York Gaming Comm'n*, No. 18-CV-00384V(F), 2019 WL 2423716, at *3 (W.D.N.Y. Mar. 14, 2019), *adopted,* 2019 WL 2423203 (W.D.N.Y. June 10, 2019).  Moreover, while New York Law does allow for personal service by mail in certain circumstances, the serving party is required to include "two copies of a statement of service by mail and acknowledgement of receipt in the form set forth in subdivision (d) of this section, with a return envelope, postage prepaid, addressed to the sender."  CPLR 312-a.  Service under this provision of the CPLR is not completed until the serving party receives the signed acknowledgement of receipt form. *Id*.; *see also Morris*, 2018 WL 2423716, at *3.  Here, Plaintiff has not shown that the

requisite acknowledgement of receipt form, with prepaid return envelope, was ever sent or completed and returned.

Accordingly, Plaintiff has not demonstrated proper service as to Carver, Cook, Hetrick, or Wallace.  Furthermore, his time for service under Rule 4(m) has expired.  For the same reasons previously discussed, the Court will not dismiss Plaintiff's claims at this time, but will instead extend his time to serve these defendants to <u>March 10, 2023</u>, with proof of service to be filed by <u>March 15, 2023</u>.  Plaintiff is again warned that failure to comply with these deadlines will result in the dismissal of his claims against these defendants without prejudice.

### C.      <u>Fitzpatrick, Ivers, Merrick, Nitti, and Seeley's Motion to Dismiss</u>

Defendants Fitzpatrick, Ivers, Merrick, Nitti, and Seeley move to dismiss the claims against them pursuant to Rule 12(b)(5) for failure to timely serve, and pursuant to Rule 12(b)(6) for failure to state a claim.  (Dkt. 39).  Once again, the Court considers the issues related to service of process first.

The record before the Court, as discussed in connection with Plaintiff's motion for a default judgment, does not demonstrate that Plaintiff ever properly served these defendants.  Instead, he simply mailed them copies of the amended complaint and a request for waiver of service, which they did not execute and return.   As previously set forth, this does not comply with Rule 4(m) or the CPLR.  Accordingly,  Plaintiff has not timely served Fitzpatrick, Ivers, Merrick, Nitti, and Seeley.   As with the other unserved defendants, Plaintiff is granted an extension to <u>March 10, 2023</u>, to properly effectuate service.   Plaintiff

must file proof of service by <u>March 15, 2023</u>.   Failure to comply with these deadlines will result in the dismissal without prejudice of Plaintiff's claims against these defendants.

### D.    <u>Mastrosimone's Motion to Dismiss and for Summary Judgment</u>

Defendant Mastrosimone seeks dismissal of the claims against him for failure to state a claim pursuant to Rule 12(b)(6) and for failure to comply with the pleading requirements of Rule 8.  (Dkt. 17-6).  In the alternative, Mastrosimone seeks summary judgment.  (*Id*.).  Mastrosimone has waived service of process (Dkt. 8), and so the Court considers his substantive contentions.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Here, the Court finds that Plaintiff has not plausibly pled a claim against Mastrosimone, nor against American Plumbing HVAC/Mechanical Inc., to the extent Plaintiff seeks to sue that entity through Mastrosimone as an employee thereof. As set forth above, the factual allegations involving Mastrosimone are that he, as an employee of American Plumbing HVAC/Mechanical Inc., "went directly against safety codes and manufacturer guidelines" in installing the gas lines at Eagle's Landing. (Dkt. 4 at ¶ 78). Plaintiff's amended complaint contains the following claims: (1) cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article VII § 7 of the New York Constitution; (2) violation of the rights to freedom of speech, to petition, and to freedom of information in violation of the First Amendment to the United States Constitution and Article VII § 8 of the New York Constitution; (3) violation of the right to substantive due process in violation of the Fourth and Fifth Amendments to the United States Constitution and Article VII § 7 of the New York

Constitution; (4) assault in the third degree in violation of the New York Penal Law; (5) criminal conspiracy in the sixth degree in violation of the New York Penal Law; (6) criminal nuisance in the second degree in violation of the New York Penal Law; (7) disorderly conduct in violation of the New York Penal Law; and (8) assault in the first degree in violation of the New York Penal Law (Dkt. 4 at 35-50).

Turning first to Plaintiff's claims brought pursuant to the United States Constitution, a party may bring a claim for violation of his federal constitutional rights pursuant to 42 U.S.C. § 1983.  "To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 195 (E.D.N.Y. 2010).  In other words, "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law," and "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citations omitted).

Here, neither Mastrosimone nor American Plumbing HVAC/Mechanical Inc. is alleged to be a state actor, nor has Plaintiff plausibly alleged that they were otherwise acting under color of state law in installing the gas lines at Eagle's Landing.  Plaintiff argues in opposition to Mastrosimone's motion that Mastrosimone was acting under color of state law because "the entity he operates through was approved by Town Officials."  (Dkt. 23-2 at 7).  However, it is well-established that "[a] finding of state action may not be premised

solely on the private entity's creation, funding, licensing, or regulation by the government."

*Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 112 (2d Cir. 2003).  Put simply,

the installation of gas lines at a privately owned apartment complex by a private actor is not

state action, notwithstanding the fact that a town may have issued permits for, inspected, or

otherwise regulated the building process.  Accordingly, Plaintiff may not maintain any of

his federal constitutional claims against Mastrosimone.

As to Plaintiff's claims based on the New York Constitution, it is similarly the case

that the New York Constitution does not "generally restrict the actions of private parties."

*Brown v. State*, 89 N.Y.2d 172, 182 (1996).  Indeed, it is clear that the freedom of speech

and due process provisions of the New York Constitution do not apply absent state action.

*See Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019) (due process provision);

*SHAD All. v. Smith Haven Mall*, 66 N.Y.2d 496, 503 (1985) (free speech provision).  As

previously discussed, Plaintiff has not plausibly alleged that Mastrosimone was a state actor

when he installed the gas lines at Eagle's Landing.

As to the New York Constitution's prohibition on cruel and unusual punishment,

it—like its federal counterpart—does not apply where there has not been a criminal

conviction.  *See Logan v. City of Schenectady*, No. 1:18-CV-01179 BKS CFH, 2019 WL

3803631, at *4 n.6 (N.D.N.Y. Aug. 13, 2019) (citing *Powlowski v. Wullich*, 102 A.D.2d

575, 583-84 (4th Dep't 1984)).  Plaintiff is not a convicted prisoner and thus cannot pursue

a claim for cruel and unusual punishment.

Finally, Plaintiff's claims based on alleged violations of the New York Penal Law

lack merit.  A private individual such as Plaintiff "cannot bring a claim under state criminal

law." *Wilson v. Neighborhood Restore Dev.*, No. 18-CV-1172 (MKB), 2020 WL 9816020, at *5 (E.D.N.Y. Sept. 28, 2020) (collecting cases); *see also Peterec v. Hilliard*, No. 12-CV-3944 CS, 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) (dismissing claim premised on violation of New York Penal Law because "private citizens do not have a private cause of action for criminal violations" (citation omitted)).

Because Plaintiff is proceeding *pro se*, the Court would ordinarily afford him an opportunity to amend his claims against Mastrosimone prior to dismissal.  However, the Court is not required to do so where any amendment would be futile.  *See Cuoco v. Moritsugu,* 222 F.3d 99, 103 (2d Cir. 2000).  Here, the defects in the claims against Mastrosimone are not of a type that could be cured through additional pleading; they are fatal to the substance of the claims.  Accordingly, the Court will not afford Plaintiff an opportunity to amend prior to dismissal.  Further, having concluded that Plaintiff's claims against Mastrosimone must be dismissed, the Court denies Mastrosimone's alternative request for summary judgment as moot.

## **CONCLUSION**

For the reasons set forth above, the Court denies Plaintiff's motions for alternative service (Dkt. 12), for electronic filing privileges (Dkt. 13), to allow manual filing (Dkt. 24), and for default judgment (Dkt. 36).

The Court grants defendant Mastrosimone's motion to dismiss or for summary judgment (Dkt. 17) to the extent that all of Plaintiff's claims against Mastrosimone are dismissed with prejudice, and denies as moot the alternative request for summary judgment. The Clerk of Court is directed to terminate Mastrosimone as a defendant in this matter.

The Court grants the motions to dismiss and/or for summary judgment filed by defendants DeWitt, Dyrland, Shafer, Wilczewski, Carver, Cook, Hetrick, Wallace, Fitzpatrick, Ivers, Merrick, Nitti, and Seeley (Dkt. 6; Dkt. 21; Dkt. 39) to the extent that the Court determines that none of these defendants were timely and properly served pursuant to Federal Rule of Civil Procedure 4.  However, rather than dismissing the claims against these defendants at this time, the Court extends Plaintiff's time for service as to all unserved defendants to <u>March 10, 2023</u>.  Plaintiff must file proof of service as to all unserved defendants on or before <u>March 15, 2023</u>.  <u>This includes unserved defendants who have not moved for dismissal but as to whom no proper proof of service or executed waiver of service has been filed on the docket</u>.  <u>If Plaintiff fails to comply with these deadlines, his claims against the unserved defendants will be dismissed without prejudice</u>.  The Court denies the remainder of DeWitt, Dyrland, Shafer, Wilczewski, Carver, Cook, Hetrick, Wallace, Fitzpatrick, Ivers, Merrick, Nitti, and Seeley's motions without prejudice to renewal in the event these defendants are properly served by Plaintiff within the timeframe set forth by the Court.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 6, 2023
        Rochester, New York